**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gravestone Entertainment LLC, | No. CV-19-03385-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Maxim Media Marketing Incorporated, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss and Compel Arbitration of Defendants Maxim Media Marketing, Inc. and Darrin Ramage (Doc. 10). For the following reasons the motion is granted.

## BACKGROUND

Plaintiff Gravestone Entertainment LLC produces horror films. In 2012, Gravestone entered licensing agreements with Defendant Maxim Media Marketing, Inc. for two of its films, "15: The Mind of a Serial Killer," and "The Innocent." Under the agreements, Maxim had exclusive, worldwide rights to promote, distribute, and sell the films for five years. A year later, however, the parties' relationship had decayed. Maxim released the rights to the films to Gravestone in July 2013, and the licensing agreements were terminated.

The license agreements each contained an identical arbitration clause, which in pertinent part stated that:

> [a]ny controversy or claim arising out of or related to this Agreement and to any part of it, including, but not limited to

> this Paragraph on arbitration, and to the performance, breach, interpretation or enforceability hereof, and all claims of fraud in the inducement of this Agreement and all claims for rescission of this Agreement, or any part of this Agreement, shall be settled by arbitration.

(Doc. 10 at 2.)

In 2019, Gravestone brought this copyright infringement action against Maxim, alleging that Maxim had continued to distribute the two films after the termination of the licensing agreement. Maxim now moves to dismiss and compel arbitration, arguing that the arbitration clauses of the two agreements bind the parties to arbitrating Gravestone's claims.

## DISCUSSION

### I. Legal Standards

Motions to dismiss and compel arbitration are properly brought under Federal Rule of Civil Procedure 12(b)(1), which allows a defendant to challenge the plaintiff's assertion that a court has subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1); *ROI Properties Inc. v. Burford Capital Ltd.*, No. CV-19-003300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019) (citing *Doe v. Schachter*, 804 F. Supp. 53, 56 (N.D. Cal. 1992)).

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. §§ 1 et seq.). The FAA broadly provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable" except upon grounds that exist at common law for the revocation of a contract. 9 U.S.C. § 2. Absent a valid contract defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if

it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

"A court deciding a motion to compel arbitration must first decide whether and to what extent the parties agreed to arbitrate." *Bonner v. Michigan Logistics, Inc.*, 250 F. Supp. 3d 388, 394–95 (D. Ariz. 2017) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The question of arbitrability is governed by federal substantive law. *See Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 939 (D. Ariz. 2003) ("[T]he Ninth Circuit establishes that 'federal substantive law governs the question of arbitrability.'") (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d at 716, 719 (9th Cir. 1999)). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d 1130. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)).

**II.     Analysis**

    **A.     Arbitrability of Gravestone's claims**

The first issue is whether Gravestone's claims fall within the scope of the arbitration clauses. The Ninth Circuit, addressing an arbitration clause requiring arbitration of any claim "arising in connection with" an agreement, has held that the arbitration clause "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula*, 175 F.3d at 721. While the clauses at issue here use slightly different language—"arising out of or related to" instead of "arising in connection with"—the Ninth Circuit's conclusion holds here because the two phrases are of at least identical breadth. With that in mind, Gravestone need only allege facts that "touch matters" covered by the agreements containing the arbitration clauses, and "all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 624 n.13). Gravestone's allegations that Maxim infringed its copyright by continuing to distribute the films following the termination of the licensing agreements are, at a minimum, related to the distribution agreement, as the distribution agreement involves the same films. And the allegations presumably define both the period

at which the distribution agreement was breached by the infringement and the period after which the alleged infringement began. The subject of this suit thus "touches matters" covered by those agreements because Maxim's alleged illegal conduct was explicitly authorized under the agreements. The claims are thus arbitrable because they fall within the scope of the clauses.

### B. Viability

The second issue is whether the arbitration clauses survived the termination of the licensing agreements. The Supreme Court has instructed courts to "presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement." *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 208 (1991). This presumption can be "negated expressly or by clear implication." *Id.* at 204 (quoting *Nolde Bros., Inc. v. Local No. 385, Bakery & Confectionary Workers Union*, 430 U.S. 243, 255 (1977)). When a contract contains an "unlimited arbitration clause," so long as the dispute in question "arises under the contract . . . it is subject to arbitration even in the postcontract period." The Court further instructed that

> [a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives the expiration of the remainder of the agreement.

*Id.* at 205–06.

Here, the arbitration clauses survived the termination of the licensing agreement. First, the parties signed "unlimited" arbitration clauses. In *Litton*, the parties had agreed to arbitrate any "[d]ifferences that may arise between the parties [to the agreement] and any alleged violations of the agreement, [or] the construction to be placed on any clause or clauses of the Agreement." *Litton*, 501 U.S. at 194. Similarly, the parties here agreed to arbitrate any "controversy or claim arising out of or related to this Agreement or any part of it," any claim regarding "the performance, breach, interpretation, or enforceability" of

the agreement, any "claims of fraud in the inducement," "and all claims for rescission of [the] Agreement." (Doc. 10 at 2.)

Second, the claims Gravestone asserts against Maxim arise under the contracts. Gravestone asserts copyright infringement claims dealing with the same two films for which the parties entered the licensing agreements. While Gravestone correctly contends that its copyrights to the films arose before the parties entered the agreement, the claims it brings now "involve[] facts and occurrences that arose before [the agreements'] expiration. *See Litton*, 501 U.S. at 205–06. The infringement claims will undoubtedly include the licensing agreements, and therefore facts and occurrences that happened before expiration.

Lastly, there is no indication that the parties intended the arbitration clauses to terminate with the licensing agreements. That the contracts themselves do not state that the duty to arbitrate survives termination is insufficient to show overcome the presumption discussed in *Litton*. *Id.* at 208; *see also Huffman v. Hilltop Companies, LLC*, 747 F.3d 391 (6th Cir. 2014) (holding that arbitration clause survived termination even when agreement's survival clause did not include arbitration clause). For those reasons, the arbitration clauses survived the termination of the agreements and bind the parties in their current copyright infringement dispute.

### C. Unconscionability

The final issue is whether the agreements are unconscionable because they could limit the damages Gravestone would be able to recover in a copyright infringement action. The unconscionability analysis focuses on the "actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* at 90 (citing *Resource Management Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985)).

/ / /

The clauses expressly provide that "[t]he arbitrator may make any . . . award which he deems just and equitable and within the scope of the agreement of the parties." (Doc. 10 at 2.) Claims within the "scope of the agreement" would include claims that Maxim was exceeding its rights to distribute or sell the films and therefore infringing Gravestone's copyrights to the films. Actions against Maxim under the Copyright Act would therefore fall within the scope of awards the arbitrator could make. Thus the arbitration agreements would not "cause an exclusive or limited remedy to fail of its essential purpose." Ariz. Rev. Stat. § 47-2719(B).[1] The arbitration clauses are therefore not substantively unconscionable.

**CONCLUSION**

Gravestone's copyright infringement claims fall within the scope of the arbitration clauses, which survive the termination of the licensing agreements because the claims arise under the agreements and there is no indication that the parties intended the arbitration clauses to expire with the agreements. Additionally, the arbitration clauses are not substantively unconscionable.

**IT IS THEREFORE ORDERED** that Defendant Maxim Media Marketing, Inc.'s Motion to Dismiss and Compel Arbitration (Doc. 10) is **GRANTED.** Plaintiff is ordered to submit to arbitration consistent with the terms of the arbitration agreement, the Federal Arbitration Act, and this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 6th day of August, 2019.

_____
G. Murray Snow
Chief United States District Judge

---

[1] Gravestone concedes that section 74-2719(B) does not specifically apply to copyright infringement actions but suggests that the principle applies. The Court assumes that the principle applies, but still concludes that it is not violated by the arbitration clauses at issue here for the reasons stated.